UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x
                              :
UNITED STATES OF AMERICA       :
                              :    05 Cr. 1149 (BSJ)
          - v. -              :    08 Cv. 3826 (BSJ)
                              :
WILLIAM MORA,                 :
                              :
          Defendant.          :
                              :
- - - - - - - - - - - - - - - x


### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
### PURSUANT TO 28 U.S.C. § 2255


MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for the United States
          of America


Marshall A. Camp
Assistant United States Attorney
     - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x
                              :
UNITED STATES OF AMERICA      :
                              :   05 Cr. 1149 (BSJ)
        - v. -                :   08 Cv. 3826 (BSJ)
                              :
WILLIAM MORA,                 :
                              :
            Defendant.        :
                              :
- - - - - - - - - - - - - - - x

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
## PURSUANT TO 28 U.S.C. § 2255

Defendant moves the Court pursuant to 28 U.S.C. § 2255 to vacate his sentence and for other relief.  The first two of Mora's three claims, relating to sentencing, are procedurally defaulted, barred by Mora's plea agreement, and substantively without merit.  The third claim, asserting ineffective assistance of counsel, is likewise without merit.  Accordingly, the Government respectfully submits that the motion should be denied.

**I.    PROCEDURAL HISTORY**

**A.    The Charges And Mora's Flight**

On April 21, 2005, special agents and task force officers of the Drug Enforcement Administration executed a New York state search warrant on a Manhattan, New York apartment inhabited by defendant-movant William Mora ("defendant" or "Mora"). (Presentence Report ("PSR") ¶¶ 6-7.)  During the search, a loaded, 9mm, semiautomatic handgun was found hidden under the bed in Mora's bedroom.  (PSR ¶¶ 7-8.)  Mora was not present during

the search. (PSR ¶ 7.)  Mora previously had been convicted of two
felonies – a 2002 conviction of attempted criminal sale of a
controlled substance in the third degree, and a 1990 conviction
of criminal sale of a controlled substance in the third degree.
(PSR ¶¶ 26; 38.)

On October 12, 2005, a Complaint was obtained charging Mora
with possessing a firearm after previously having been convicted
of a felony, in violation of Title 18, United States Code,
Section 922(g)(1).  Mora was arrested pursuant to the Complaint
on October 18, 2005, and he was released on bail on October 28,
2005.  An Indictment was returned by the Grand Jury on November
2, 2005 charging Mora in a single count with violating Section
922(g)(1).

On or about March 14, 2006, while this matter was pending,
Mora violated his bail condition of home confinement and
absconded.  The Court issued a bench warrant and Mora was
captured on or about October 3, 2006.

### B.    The Plea Agreement And Guilty Plea

On November 9, 2006, Mora pled guilty to the sole count of
the Indictment pursuant to a written plea agreement.  In the plea
agreement, Mora stipulated that he would neither appeal nor
litigate under 28 U.S.C. § 2255 any sentence within or below the
stipulated Sentencing Guidelines range of 57 to 71 months'

imprisonment. (Ex. A (plea agreement) at 5[1]; see Ex. B (plea transcript) at 10.)

At the sentencing hearing on February 9, 2007, the Court sentenced Mora to 57 months' imprisonment - the bottom of Guidelines range stipulated in the plea agreement. (Ex. C (sentencing transcript) at 11; Ex. A at 4.)

Mora did not file a direct appeal.

## II. ARGUMENT

### A. Mora's First Two Claims, Relating to Sentencing, Are Procedurally Barred And Waived

The essence of Mora's first two claims, which purport to seek relief for "sentence manipulation" and "related conduct" (Motion ("Mot.") at 2-3), is that Mora's sentence should be vacated, and he should be re-sentenced, because his Guidelines offense level and criminal history were overstated due to the existence of a separate state narcotics prosecution. These claims are procedurally defaulted because they were not raised on appeal. Even were they not barred, they are waived by Mora's plea agreement with the Government. Moreover, they are substantively without merit. Accordingly, they should be denied.

#### 1. The First Two Claims Are Procedurally Barred

Section 2255 is not designed as a substitute for a direct

---

[1] Exhibit A consists of a partially-executed plea agreement that was signed by Mora and his attorney before the plea hearing. See Ex. B at 10.

appeal, <u>United States</u> v. <u>Frady</u>, 456 U.S. 152, 165 (1982), and a defendant may not use a Section 2255 motion to litigate issues that could have been raised on direct appeal. <u>Massaro</u> v. <u>United States</u>, 538 U.S. 500, 504 (2003) (noting "general rule" that "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice"). Cause is measured by a stringent standard of diligence. <u>See</u>, <u>e.g.</u>, <u>Coleman</u> v. <u>Thompson</u>, 501 U.S. 722, 752-53 (1991) ("cause" is "something external to the petitioner" that "cannot fairly be attributed to him"; "[a]ttorney ignorance or inadvertence is not 'cause'"); <u>Murray</u> v. <u>Carrier</u>, 477 U.S. 478, 488 (1986) ("cause" standard requires petitioner to demonstrate objectively that some factor constitutes cause such as "interference by officials"). Moreover, if the petitioner can establish cause for failing to file a direct appeal, he must then also establish "prejudice resulting from such failure." <u>Raphaela</u> v. <u>United States</u>, 2004 U.S. Dist. LEXIS 1310, *3 (S.D.N.Y. Feb. 3, 2004); <u>Massaro</u>, 538 U.S. at 504.

Mora's motion does not even address his failure to raise these claims on direct appeal, much less show cause and prejudice for that failure. This alone warrants denial of the motion as to the first two claims. <u>See, e.g.</u>, <u>Hicks</u> v. <u>United States</u>, 2002 U.S. Dist. LEXIS 20606, at *2 (S.D.N.Y. Oct. 23, 2002) (Jones, J.) (denying § 2255 motion where movant "neither made a direct

appeal nor did he show cause for failing to raise such an appeal.")

### 2. The First Two Claims Are Waived

Even if Mora's first two claims were not procedurally barred, the issues he raises are not cognizable on collateral review in light of his guilty plea. Where, as here, a movant has pled guilty, the inquiry on collateral review "is ordinarily confined to whether the underlying plea was both counseled and voluntary." See United States v. Broce, 488 U.S. 563, 569 (1989); see also Bousley v. United States, 523 U.S. 614, 621 (1998) (guilty plea may be attacked on collateral review only in "strictly limited" circumstances). Furthermore, Mora not only pled guilty, he waived his first two claims in his plea agreement with the Government. The agreement provides that "the defendant will not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Guidelines Range set forth above . . . ." (Ex. A at 5.) The agreement provides for a Stipulated Guidelines Range of 57 to 71 months' imprisonment. (Ex. A at 4.) The Court imposed a 57-month sentence that was within - and at the bottom - of this range. It is well-settled that a defendant's agreement to waive his right to appeal or collaterally attack his sentence is generally enforceable, where the record contains sufficient evidence to establish a knowing

and voluntary waiver.  <u>See</u> <u>Garcia-Santos</u> v. <u>United States</u>, 273
F.3d 506, 509 (2d Cir. 2001) (defendant who enters a guilty plea
may agree to waive the right to bring a collateral attack);
<u>Hicks</u>, 2002 U.S. Dist. LEXIS 20606, at *2 (appellate waivers "are
valid so long as the waiver of the right to appeal or seek habeas
corpus was knowing and voluntary.").

The record contains ample evidence that Mora's waiver was
knowing and voluntary.  During the plea hearing, the Court
confirmed, among other things, that: Mora was satisfied with his
attorney's representation; he had reviewed the plea agreement
with his attorney before signing it; and he understood that,
pursuant to the plea agreement, he was "going to give up or
waive" his right to appeal his sentence "or challenge it in any
way" if the Court imposed a sentence within the 57- to 71-month
range.  (Ex. B at 4, 10.)  Indeed, Mora does not dispute that he
knowingly and voluntarily entered into the plea agreement and
accepted its waiver provision.

Accordingly, Mora's first two claims also should be denied
because they are waived.

### 3.    The First Two Claims Are Without Merit

Even were they not barred and waived, Mora's first two
claims are without merit.  The gist of these claims appears to be
that the instant federal firearms prosecution is somehow related
to a separate New York state narcotics case, and that these two

matters should have been combined for prosecution (and sentencing) in a single forum.  Mora contends that, had the cases been so merged, he would have received a shorter sentence than the cumulative length of the federal and state sentences he now faces.  (Mot. 2-4.)  He also argues that this Court should have granted a Guidelines departure, or imposed a below-Guidelines sentence, to account for the state sentence.  Mora is factually and legally mistaken – the two cases are not related, and there is simply no authority for the consolidation and/or sentencing adjustments Mora urges.

<u>a.</u>   <u>Mora's Claim Regarding "Piecemeal"</u>
<u>Prosecution</u>

Mora's argument that the federal and state cases are related, and thus should have been combined, is based on a faulty premise.  The cases are related only inasmuch as they share a defendant.  In the state case, Mora was charged with a single count of conspiring to violate the New York state narcotics laws.  (PSR ¶ 43.)  This count alleged three overt acts by Mora: (1) On January 25, 2005, he drove to a Home Depot in Riverhead, New York to complete a cocaine transaction; (2) On February 11, 2005, he drove to Suffolk County, New York to receive money owed to him by a co-conspirator; and (3) On February 11, 2005, he drove to Suffolk County to complete another cocaine transaction.  In contrast, the case before this Court involves Mora's possession of a firearm in Manhattan, New York on April 21, 2005.  The state

-7-

and federal cases are thus factually, temporally and geographically different.

Even were the cases somehow related, Mora's argument that they should have been consolidated is legally unfounded. The Government is not aware of any mechanism permitting the simultaneous prosecution of state and federal crimes in a single forum. To the extent Mora is arguing that the Government should have been required to charge him with a federal narcotics offense analogous to the state crime, and that the state should have been precluded altogether from prosecuting its case, there is simply no authority for such a position. As a practical matter, it might not even have been possible: it is not at all clear that venue would lie in this District for the Suffolk County-based conduct at issue in the state Indictment, nor is it clear that the firearm and narcotics offenses are sufficiently related to permit joinder under Federal Rule of Criminal Procedure 8. Moreover, even if some joint proceeding could be conjured, Mora does not (and cannot) point to any constitutional, statutory or other rule that would <u>require</u> such "consolidation." Given that the Supreme Court long has held that the Double Jeopardy Clause of the Fifth Amendment does not even preclude a federal prosecution for conduct <u>identical</u> to that for which a state conviction has been obtained, <u>Abbate</u> v. <u>United States</u>, 359 U.S. 187 (1985), it is difficult to imagine that some other rule would

require separate sovereigns to consolidate related (much less unrelated) cases.

>    b.    Mora's Claim Regarding "Sentencing Disparity"

Mora's second claim is that the federal sentence should have been reduced to account for the purported fact that cumulative federal and state sentences would have the effect of subjecting him to a "harsher sentence than similarly situated offenders." (Mot. at 4.)  As an initial matter, such an argument would have been rank speculation at the time of sentencing in this case, because Mora had not yet been sentenced in the state case.  Even if the Court could have known the precise effect the state case would have at the time of sentencing, it would not have been a particularly compelling fact: Mora's state sentence was imposed to run <u>concurrently</u> with the federal sentence and thus will extend his total time in custody by as little as one year and, in any case, less than six years.[2]

Moreover, the two authorities cited by Mora – 18 U.S.C. §

---

[2] Mora was sentenced to 57 months' imprisonment by this Court and subsequently sentenced by the state court to an indeterminate term of 4.5 to nine years' imprisonment, to run concurrently with the federal sentence.  (Mora Supp., Sentence & Commitment.)  Mora concedes that his projected release date from federal detention is November 4, 2010. (Mora Supp., U.S. BOP Detainer Action Letter.)  He also concedes that: his date of parole eligibility in the state system will be December 19, 2011; his tentative conditional release date is June 19, 2013; and the maximum expiration date for his state sentence is June 19, 2016. (Mora Supp., July 16, 2007 letter from New York D.O.C.) Accordingly, the state sentence will add between approximately one and 5.5 years to Mora's total period of imprisonment.

3553(a) and U.S. Sentencing Guidelines § 5G1.3(b) – do not support this claim.  The latter is plainly inapt as it relates to a term of imprisonment for another offense that constitutes relevant conduct as to the instant offense and was the basis for an increase in the offense level of the instant offense.  Neither predicate obtains here.

Section 3553(a)(6) is similarly unavailing.  That provision requires a sentencing court to take into account the "need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."  Mora identifies no such disparity.  He received a sentence at the bottom of the applicable Guidelines range.  He does not (and cannot credibly) contend that such a sentence represented an unwarranted disparity vis-a-vis sentences received by other defendants with similar records convicted of similar conduct.

Mora's argument that he is similarly situated to a defendant "apprehended with a small amount of narcotics [who has] a firearm nearby" defies credulity.  First, § 3553(a)(6) by its plain terms contemplates comparisons with individuals convicted of conduct similar to that for which a defendant is being sentenced, not similar to conduct with which the defendant is charged in some other forum.  Second, Mora was not apprehended "with a small amount of narcotics" and a "firearm nearby."  Rather, at the time of his sentencing here, Mora had pleaded guilty to a <u>conspiracy</u>

count in a case in which he was alleged to have participated in
at least two cocaine transactions. (PSR ¶¶ 42, 43.) Thus, even
were it appropriate to compare Mora to individuals charged in a
single case with firearms and narcotics offenses, such a
comparison likely would not be favorable to Mora. Federal
narcotics conspiracy counts can carry five- and ten-year
mandatory minimum sentences. See 21 U.S.C. § 841(b)(1).
Defendants with prior drug felonies - like Mora - not only cannot
benefit from "safety valve" relief from such sentences, they are
also subject to a potential doubling of the minimum terms (to ten
or twenty years). See 21 U.S.C. § 841(b)(1); 18 U.S.C. §
3553(f). Moreover, when the facts of a case support firearms and
narcotics offenses being brought against one defendant in a
single proceeding, those facts may also support a prosecution for
use of a firearm during and in relation to a drug trafficking
crime, in violation of 18 U.S.C. § 924(c). That offense carries
five- to ten-year mandatory minimum sentences imposed consecutive
to any drug trafficking sentence. Id. Thus, it is highly
unlikely that Mora could show, even were it relevant, that the
cumulative sentence he received in both cases is longer than
sentences received by defendants with "similar records" charged
with "similar conduct" in a single case.

       c.   Mora's Claim Regarding His Criminal History

Lastly, Mora contends that he received three criminal

history points as a result of the state conviction, instead of one point. (Mot. at 3.)  Mora is wrong - he received one criminal history point for that conviction. (PSR ¶ 42; Ex. A at 2-3.)

Mora's first two claims are procedurally defaulted, waived, and without merit.  The Court is respectfully urged to deny them.

### B.   Mora's Claim Of Ineffective Assistance Of Counsel Is Without Merit

In his third claim, of ineffective assistance of counsel, Mora lists several arguments he believes his attorney should have made either in connection with plea negotiations or sentencing. No competent counsel would have made any of these arguments because they are utterly without merit.  The third claim should therefore be denied.

To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate both that his counsel's performance (1) "fell below an objective standard of reasonableness," and (2) "affirmatively prove prejudice" by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88; 693-94 (1984); see also United States v. Campbell, 300 F.3d 202, 214 (2d Cir. 2002).  Because none of the arguments advanced by Mora are even remotely plausible, defense counsel plainly was not ineffective in failing to make them.

-12-

    1.    <u>"Piecemeal" Prosecution And Sentencing Disparity</u>

Mora recasts his first two claims into his claim of ineffective assistance by arguing, in essence, that his attorney was ineffective for failing to seek to join the federal firearms and state narcotics cases, and failing to make the "sentencing disparity" arguments described above. As discussed, however, these claims are factually and legally unsupportable and would not have been made by competent counsel.

    2.    <u>Guidelines Enhancement</u>

Mora further argues that his counsel was ineffective in failing to oppose a stipulation in the plea agreement - adopted by the Court - that a two-level increase in the Guidelines offense level applied because the firearm possessed by Mora had an altered or obliterated serial number. <u>See</u> U.S.S.G. § 2K2.1(b)(4) (2004 ed.); PSR ¶ 15. Mora does not dispute that the serial number was in fact obliterated. Indeed, he stipulated to that fact in his plea agreement (Ex. A at 2), did not object to its inclusion in the PSR (PSR ¶ 15; Ex. C at 2), and did not object to the Court's adoption of the PSR calculation. (Ex. C at 8-9.) Rather, he argues that the enhancement should not have been applied because the obliterated serial number was not alleged in the Indictment. (Mot. at 4.) This argument is foreclosed by precedent. Only those facts (other than prior convictions) that increase the <u>maximum penalty</u> for a crime must

-13-

be charged in the indictment.  <u>Apprendi</u> v. <u>New Jersey</u>, 530 U.S.
466, 476 (2000); <u>accord</u> <u>United States</u> v. <u>Marcus</u>, 2008 U.S. App.
LEXIS 17222, at *18 (2d Cir. Aug. 14, 2008).  The Guidelines
enhancement at issue here did not increase the ten-year statutory
maximum and thus need not have been alleged in the Indictment.

> 3.   Failure To Appeal

Mora also asserts that his attorney "failed to perfect a
timely appeal."  (Mot. at 4.)  Mora does not contend that his
attorney failed to consult with him about an appeal nor that
counsel ignored a specific instruction to file an appeal.  This
claim therefore fails.  <u>United States</u> v. <u>Campusano</u>, 442 F.3d 770,
773 n.3 (2d Cir. 2006).

Even if Mora could establish that counsel did not consult
with him about filing an appeal, the claim would still fail.[3]
The question for the Court in that case would be whether "'there
is a reasonable probability that, but for counsel's deficient
failure to consult with him about an appeal, [defendant] would
have timely appealed.'"  <u>United States</u> v. <u>Campusano</u>, 442 F.3d
770, 773 n.3 (2d Cir. 2006) (quoting <u>United States</u> v. <u>Flores-
Ortega</u>, 528 U.S. 470, 484 (2000)).  It is manifest in this case,
however, that competent counsel would not have counseled an

---

[3]  Should Mora make an allegation that his attorney did not
consult with him about an appeal, and should the Court not
otherwise deny this motion, the Government would request leave to
contact prior counsel and determine whether counsel wishes to
submit an affidavit on this point.

appeal and that no reasonable defendant in Mora's position would have pursued one.  Mora received a sentence at the bottom of the Guidelines range stipulated in his plea agreement.  The agreement included an appellate waiver.  And the agreement immunized Mora for conduct relating to his flight and failure to appear (Ex. A at 1) – conduct for which Mora could have been charged had he appealed and managed to withdraw his plea and unwind his plea agreement.  In other words, Mora got the best possible benefit of his bargain, and no competent counsel would have advised Mora to upset that bargain by pursuing the meritless arguments urged by Mora in the instant motion.

Defendant simply cannot satisfy either prong of the Strickland test for ineffective assistance.  Counsel's failure to take the unsupportable positions suggested by Mora, and purported failure to advise an appeal, cannot overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 446 U.S. at 689.  Moreover, unfounded and unpersuasive arguments would not have changed the outcome of this proceeding nor warranted an appeal, as required by the second prong of the Strickland analysis.  Accordingly, Mora's third claim should be denied.

**III. CONCLUSION**

     For the foregoing reasons, the Government respectfully requests that the Court deny defendant's motion in its entirety.

Dated:     September 04, 2008
           New York, New York

                      MICHAEL J. GARCIA
                      United States Attorney
                      Southern District of New York

                       s/ Marshall Camp
        By:  _____
                      Marshall A. Camp
                      Assistant United States Attorney
                      Tel.: (212) 637-1035

<u>AFFIRMATION OF SERVICE</u>

     MARSHALL A. CAMP affirms under penalty of perjury pursuant to 28 U.S.C. § 1746 the following:

     That on the 4th day of September 2008, he caused one copy of the within GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION PURSUANT TO 28 U.S.C. § 2255, and exhibits thereto, to be mailed to:

     William Mora
     Reg. No. 58356-054
     FCI - Elkton
     P.O. Box 10
     Lisbon, OH 44432

     S/ Marshall A. Camp
_____
MARSHALL A. CAMP
Assistant United States Attorney

# EXHIBIT A

**U.S. Department of Justice**



*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 10, 2006

Robert M. Baum, Esq.
Federal Defenders of New York, Inc.
52 Duane Street, 10th Floor
New York, NY  10007

     Re: <u>United States v. William Mora</u>,
        05 Cr. 1149 (BSJ)

Dear Mr. Baum:

    On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from William Mora ("the defendant") to Count One of the above-referenced Indictment. Count One charges the defendant with possession of a firearm after having been convicted of a felony, in violation of Title 18, United States Code, Section 922(g)(1), and carries a maximum sentence of 10 years' imprisonment, a maximum fine, pursuant to Title 18, United States Code, Section 3571, of $250,000, a maximum term of three years' supervised release, and a mandatory $100 special assessment. In addition to the foregoing, the Court must order restitution in accordance with Sections 3663, 3663A and 3664 of Title 18, United States Code.

    In consideration of the defendant's plea to the above offense, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations as to which this Office cannot, and does not, make any agreement) for: (1) the conduct set forth in Count One of the Indictment; (2) his violation of bail conditions from in or about March 2006 through and including October 2006; and (3) his failure to appear at the May 12, 2006 conference in this matter.

    In consideration of the foregoing and pursuant to Sentencing Guidelines Section 6B1.4, the parties hereby stipulate to the following:

02.01.05

A.    Offense Level

1.    The Guideline applicable to the offense charged in Count One of the Indictment is U.S.S.G. § 2K2.1.  Pursuant to U.S.S.G. § 2K2.1(a)(4)(A), the base offense level is 20, because the defendant committed the instant offense subsequent to sustaining one felony conviction of a controlled substance offense.

2.    Because the firearm had an altered or obliterated serial number, there is a 2-level increase pursuant to U.S.S.G. § 2K2.1(b)(4).

3.    The defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation and prosecution of the instant offense of conviction, to wit, the defendant, among other things, violated the home detention and electronic monitoring conditions of his bail and failed to appear as directed in this matter.  Pursuant to U.S.S.G. § 3C1.1 and Application Note 4(e), this results in a 2-level increase.

3.    Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a).  Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, an additional 1-level reduction is warranted, pursuant to U.S.S.G. § 3E1.1(b), because the defendant will have given timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level for Count One is 21.

B.    Criminal History Category

Based upon the information now available to this Office, the defendant has 8 criminal history points, calculated as follows:

1.    The defendant was convicted on or about November 28, 2005 of attempted conspiracy in the second degree, a class C

02.01.05                          2

felony, in violation of New York Penal Law Sections 110.00 and 105.15, in Suffolk County Court, Suffolk County, New York. Although the defendant has not yet been sentenced, this conviction carries a sentence of four-to-eight years' imprisonment.  Pursuant to U.S.S.G §§ 4A1.2(a)(4) and 4A1.1(c), this results in 1 criminal history point.

2.   The defendant was convicted on or about May 14, 2002 of attempted criminal sale of a controlled substance in the third degree, a class C felony, in violation of New York Penal Law Section 220.39, in New York County Supreme Court.  This conviction resulted in a sentence of five years' probation. Pursuant to U.S.S.G § 4A1.1(c), this sentence results in 1 criminal history point.

3.   The defendant was convicted on or about February 21, 2001 of trespass, a violation, in violation of New York State Penal Law Section 140.05, in New York County Criminal Court. This conviction resulted in a sentence of conditional discharge and one day of community service.  Pursuant to U.S.S.G § 4A1.2(c)(1), this sentence results in 0 criminal history points.

4.   The defendant was convicted on or about May 25, 2000 of criminal facilitation in the fourth degree, a class A misdemeanor, in violation of New York State Penal Law Section 115.00, in Queens County Supreme Court.  The defendant was imprisoned in connection with this offense from August 25, 1996 until September 30, 1996, and was subsequently sentenced to time served.  Pursuant to U.S.S.G §§ 4A1.1(c) and 4A1.2(c)(1), this sentence results in 1 criminal history point.

5.   The defendant was convicted on or about April 17, 1990 of criminal possession of a controlled substance in the first degree, a class A felony, in New York County Criminal Court.  This conviction resulted in a sentence of three-to-nine years' imprisonment.  The defendant was released from imprisonment for this offense on November 8, 1990.  Pursuant to U.S.S.G §§ 4A1.1(a) and 4A1.2(e)(1), this conviction results in 3 criminal history points.

6.   The defendant committed the instant offense while under a criminal justice sentence, to wit, probation supervision by New York State pursuant to the May 14, 2002 conviction and sentence enumerated in paragraph 2 above.  Pursuant to U.S.S.G. § 4A1.1(d), this fact results in 2 criminal history points.

Therefore, the defendant has a total of 8 criminal history points, which places him in Criminal History Category IV.

C.    Sentencing Range

Based upon the calculations set forth above, the defendant's stipulated sentencing Guidelines range is 57 to 71 months (the "Stipulated Guidelines Range").  In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to §5E1.2.  At Guidelines level 21, the applicable fine range is $7,500 to $75,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted.  Accordingly, neither party will seek such a departure or seek any adjustment not set forth herein.  Nor will either party suggest that the Probation Department consider such a departure or adjustment, or suggest that the Court *sua sponte* consider such a departure or adjustment.

The parties further agree that a sentence within the Stipulated Guidelines Range would constitute a reasonable sentence in light of all of the factors set forth in Title 18, United States Code, Section 3553(a).  In addition, neither party will seek a sentence outside of the Stipulated Guidelines Range, suggest that the Probation Department consider a sentence outside of the Stipulated Guidelines Range, or suggest that the Court sua sponte consider a sentence outside of the Stipulated Guidelines Range.

Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this agreement limits the right of the parties (i) to present to the Probation Department or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Sentencing range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above. Nothing in this agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, see U.S.S.G. §3E1.1, and/or imposition of an adjustment for obstruction of justice, see U.S.S.G. §3C1.1, regardless of any stipulation set forth above, should the defendant move to withdraw his guilty plea once it is entered, or should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this

Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this agreement.

It is understood that pursuant to Sentencing Guidelines §6B1.4(d), neither the Probation Department nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Department or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is understood that the Sentencing Guidelines are not binding on the Court. The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Guidelines Range set forth above and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. It is further agreed that any sentence within the Stipulated Guidelines range is reasonable. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, Jencks Act material, exculpatory material pursuant to

02.01.05                                5

Brady v. Maryland, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, and impeachment material pursuant to Giglio v. United States, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

By entering this plea of guilty, the defendant also waives any and all right the defendant may have, pursuant to 18 U.S.C. § 3600, to require DNA testing of any physical evidence in the possession of the Government.  The defendant fully understands that, as a result of this waiver, any physical evidence in this case will not be preserved by the Government and will therefore not be available for DNA testing in the future.

It is further agreed that should the conviction following defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution.  It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and defendant.  No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

MICHAEL J. GARCIA
United States Attorney

By: _____
Marshall A. Camp
Assistant United States Attorney
(212) 637-1035

APPROVED:

_____
Laura Birger
Chief, General Crimes

AGREED AND CONSENTED TO:

_____        _____
William Mora                   DATE

APPROVED:

_____        _____
Robert M. Baum, Esq.           DATE
Attorney for William Mora

02.01.05                        7

# EXHIBIT B

6B95MORP                       plea

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4                v.                        05 CR. 1149 (BSJ)

5  WILLIAM MORA,

6                Defendant.

7  ------------------------------x

8
                                          November 9, 2006
9                                         4:10 p.m.

10
   Before:
11
                    HON. BARBARA S. JONES,
12
                                          District Judge
13

14                         APPEARANCES

15  MICHAEL J. GARCIA
        United States Attorney for the
16      Southern District of New York
    BY:  MARSHALL A. CAMP
17      Assistant United States Attorney

18  FEDERAL DEFENDERS OF NEW YORK, INC.
        Attorneys for Defendant
19  BY:  ROBERT BAUM

20

21

22

23

24

25

6B95MORP                          plea

1              (Case called)

2              THE DEPUTY CLERK:  Is the government ready?

3              MR. CAMP:  Yes.  Marshall Camp on behalf of the United

4       States.  Good afternoon, your Honor.

5              THE COURT:  Good afternoon, Mr. Camp.

6              THE DEPUTY CLERK:  Is the defendant ready?

7              MR. BAUM:  Yes.  Robert M. Baum on behalf of Mr. Mora.

8       Good afternoon, your Honor.

9              THE COURT:  Good afternoon, Mr. Baum.

10             I understand that your client wants to enter a plea of

11      guilty in this case, Mr. Baum?

12             MR. BAUM:  Yes, your Honor; he requests the Court's

13      permission to withdraw his previously entered plea of not

14      guilty and to enter a plea of guilty to the single count

15      indictment before the Court.

16             THE COURT:  I understand that there is a plea

17      agreement in this case.  I have the original up here signed, it

18      has been marked as Court Exhibit 1, and I will hand it back for

19      use during the allocution.

20             Denise, can you give it to the defendant?

21             Mr. Mora, would you please stand and raise your right

22      hand?

23             (Defendant sworn)

24             THE COURT:  You can be seated.

25             First of all, do you understand that you are now under

6B95MORP                    plea

1   oath and that if you answer any of my questions falsely, your

2   false or untrue answers can be used against you in another

3   prosecution for perjury or making a false statement?

4           THE DEFENDANT:  Yes, ma'am.

5           THE COURT:  Would you tell me your full name?

6           THE DEFENDANT:  William Mora.

7           THE COURT:  And how far did you go in school?

8           THE DEFENDANT:  I completed, I think, my GED.

9           THE COURT:  How old are you?

10          THE DEFENDANT:  36 years old.

11          THE COURT:  Mr. Mora, are you a United States citizen?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  Are you now or have you recently been

14  under the care of a doctor or a psychiatrist?

15          THE DEFENDANT:  No, ma'am.

16          THE COURT:  Have you ever been treated in the past, or

17  hospitalized for any mental illness or any type of addiction?

18          THE DEFENDANT:  No, ma'am.

19          THE COURT:  In the last 24 hours, Mr. Mora, have you

20  taken any drugs, medicine or pills, or had any alcoholic

21  beverages?

22          THE DEFENDANT:  No, ma'am.

23          THE COURT:  As you sit here today, do you understand

24  what is happening in this proceeding?

25          THE DEFENDANT:  Yes, ma'am.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6B95MORP                          plea

1          THE COURT:  And, are you feeling physically well?

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  And are you able to concentrate?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Mr. Baum, do you have any doubt as to your

6    client's competence to plead at this time?

7          MR. BAUM:  No, your Honor.

8          THE COURT:  Thank you.

9          Mr. Mora, on the basis of your responses to my

10   questions and my own observation of your demeanor, I find you

11   are competent to enter a plea of guilty at this time.

12          Your lawyer has told me that you want to enter a

13   guilty plea.  Do you wish to plead guilty this afternoon?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  Have you had enough of an opportunity, a

16   sufficient amount of time to discuss your case with Mr. Baum

17   and, in particular, to talk to him about the consequences of

18   entering a guilty plea?

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  Are you satisfied with his representation

21   of you?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  I am now going to explain certain

24   Constitutional rights that you have and that you will be giving

25   up if you enter a plea of guilty.  If there is anything you

1  don't understand, please ask me about it.

2       First of all, under the Constitution and laws of the

3  United States, you are entitled to a speedy and public trial by

4  a jury on the charge against you in the indictment.

5       Do you understand that?

6       THE DEFENDANT:  Yes, ma'am.

7       THE COURT:  And, if you had a trial, you would be

8  presumed innocent, the government would have to prove that you

9  were guilty by competent evidence and beyond a reasonable doubt

10 before you could be convicted.  You would not have to prove

11 that you were innocent.  And, a jury of 12 people would have to

12 agree unanimously that you were guilty before you could be

13 convicted.

14      Do you understand that?

15      THE DEFENDANT:  Yes, ma'am.

16      THE COURT:  At a trial, if you decided that you wanted

17 one and at every stage of your case, you would be entitled to

18 be represented by an attorney, just as you are this afternoon.

19 If you could not afford one, one would be appointed to

20 represent you free of cost.

21      Do you understand that?

22      THE DEFENDANT:  Yes, ma'am.

23      THE COURT:  During a trial, the witnesses for the

24 government would have to come in to court and testify in front

25 of you and your lawyer could cross-examine those witnesses.  He

6B95MORP                              plea

1    could object to evidence that the government offered.  And if

2    you wanted him to, he could issue subpoenas and compel

3    witnesses to come in and testify on your behalf.  He could also

4    issue subpoenas for other types of evidence.

5               Do you understand that?

6               THE DEFENDANT:  Yes, ma'am.

7               THE COURT:  At a trial you would have the right to

8    testify if you chose to do so.  You would also have the right

9    not to testify.  If that was your decision, no inference or

10   suggestion of guilt could be drawn from the fact that you did

11   not testify.

12              Do you understand that?

13              THE DEFENDANT:  Yes, ma'am.

14              THE COURT:  At this time, Mr. Mora, right now, as you

15   are entering this plea, you have the right to change your mind

16   and plead not guilty and go to trial.

17              Do you know that?

18              THE DEFENDANT:  Yes, ma'am.

19              THE COURT:  Do you have any questions about any of

20   these rights?

21              THE DEFENDANT:  No, ma'am.

22              THE COURT:  Do you understand that when you enter your

23   plea of guilty, you are giving up your right to a trial and the

24   other rights that I have described?

25              THE DEFENDANT:  Yes, ma'am.

6B95MORP                          plea

1          THE COURT:  Do you have a copy of the indictment in

2   front of you?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Have you read this indictment and

5   discussed it with Mr. Baum?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  At this point I'm going to explain to you

8   what you are charged with in this one count indictment and also

9   tell you what the maximum possible penalties are for the crime.

10         In Count One, which is the only count in this

11  indictment, you are charged with possession of a firearm after

12  having been convicted of a felony.

13         Do you understand that's the charge against you?

14         THE DEFENDANT:  Yes, ma'am.

15         THE COURT:  That particular crime carries a maximum

16  sentence of 10 years in prison and it has a maximum fine of

17  $250,000, a maximum term of supervised release of three years

18  and a mandatory $100 special assessment.

19         Do you understand that those are the maximum possible

20  penalties for this crime?

21         THE DEFENDANT:  Yes, ma'am.

22         THE COURT:  I mentioned supervised release.  If you

23  are sentenced to a period of incarceration, Mr. Mora, when you

24  are released from prison there are terms of behavior with which

25  you must comply.  These are the terms of supervised release.

6B95MORP                        plea

1    If you violate those terms, you can be found in violation after

2    a hearing, without a jury trial, and returned to prison for the

3    term of your supervised release.

4              Do you understand that?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  Now, as a United States citizen I want you

7    to also understand that if I accept your guilty plea and

8    adjudge you guilty, that may deprive you of valuable civil

9    rights such as the right to vote, the right to hold public

10   office, the right to serve on a jury, and the right to possess

11   any kind of firearm -- independent of your status as a felon.

12             Do you understand that?

13             THE DEFENDANT:  Yes, ma'am.

14             THE COURT:  Now, Mr. Mora, under the current law there

15   are sentencing guidelines.  There are also other factors that

16   Congress has set forth in the sentencing statutes and I must

17   consider all of those in determining what a reasonable sentence

18   is in your case.

19             Have you talked to Mr. Baum about the guidelines and

20   the other factors in the statutes?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  Do you understand that I have the

23   discretion, while taking into account the provisions and the

24   policies of the guidelines, to sentence you to any period of

25   incarceration between zero and 10 years?

6B95MORP                              plea

1          Do you understand that?

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  Now, Mr. Mora, do you also understand that

4    if you your attorney or anyone else has attempted to predict

5    what your sentence will be that their prediction could be

6    wrong?

7          Do you understand that?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  Do you also fully understand that even if

10   your sentence is different from what your attorney or anyone

11   else told you that it might be, or if it is different from what

12   you expect or what you hoped for, you are still bound by your

13   guilty plea and will not be allowed to withdraw your plea of

14   guilty?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  Now, as part of your plea agreement with

17   the government, you and the government have agreed that the

18   appropriate guideline range, which is an advisory guideline

19   range for your sentence, is 57 to 71 months.

20         Are you aware of that agreement, on your part, of the

21   government?

22         THE DEFENDANT:  Yes, ma'am.

23         THE COURT:  Do you understand probation is not bound

24   by that agreement and I am not bound by that agreement?

25         THE DEFENDANT:  Yes, ma'am.

6B95MORP                          plea

 1              THE COURT:  And, do you understand I may impose

 2     whatever sentence I believe is appropriate under the

 3     circumstances, the statutory considerations and the guidelines,

 4     and that if you received a higher sentence you will have no

 5     right to withdraw your plea?

 6              THE DEFENDANT:  Yes, ma'am.

 7              THE COURT:  Now, in addition, do you also understand

 8     that as part of your plea agreement you have agreed that you

 9     were going to give up or waive your right to appeal your

10     sentence or challenge it in any way if I sentence you within

11     that range of 57 to 71 months, or below it?

12              So, do you understand that if I sentence you within

13     the range of 57 to 71 months, or below that, you have given up

14     your right to appeal that sentence or to challenge it under

15     2255 or 2241?

16              Do you understand that?

17              THE DEFENDANT:  Yes, ma'am.

18              THE COURT:  Would you take a look at your plea

19     agreement and tell me whether or not you talked with your

20     lawyer about it before you signed it?  And, did you sign it?

21     Is that your signature?  Let's start there.

22              THE DEFENDANT:  Yes, ma'am.

23              THE COURT:  Okay.  And did you discuss it with

24     Mr. Baum before you signed it?

25              THE DEFENDANT:  Yes, ma'am.

6B95MORP                              plea

1          THE COURT:  Do you understand it --

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  -- the plea agreement?  Okay.

4     Is there anything that has been left out of that

5  written agreement, any additional agreement between you and the

6  government or anyone else?

7          THE DEFENDANT:  No, ma'am.

8          THE COURT:  Okay.

9     Now, Mr. Mora, other than the plea agreement itself,

10  has anybody made any promises to you, or has anybody threatened

11  you or forced you, in any way, to plead guilty or to enter into

12  the plea agreement?

13          THE DEFENDANT:  No, ma'am.

14          THE COURT:  Mr. Camp, would you please place the

15  elements for the crime charged on the record?

16          MR. CAMP:  Yes, your Honor.  The government must prove

17  each of the following elements beyond a reasonable doubt:

18     First, that the defendant was convicted in a court of

19  a crime punishable by imprisonment for a term exceeding one

20  year as charged in the indictment;

21     Second, that the defendant knowingly possessed a

22  firearm as charged; and

23     Third, that the possession charge within or affecting

24  interstate commerce.

25     At trial, the government would offer certified court

6B95MORP                          plea

1    records, other documents, testimony and physical evidence

2    showing the -- I'm sorry, your Honor.  Did you want a proffer

3    of proof as well?

4              THE COURT:  Yes.  Go ahead.

5              MR. CAMP:  -- showing the following, that the

6    defendant was convicted in May 2002 in Supreme Court of New

7    York, New York County, of attempted criminal sale of a

8    controlled substance in the third degree and, in April 1990, in

9    the Supreme Court of New York, New York County of criminal

10   possession of a controlled substance in the first degree; that

11   on or about April 21st, 2005, the defendant possessed a loaded

12   llama brand .9 millimeter semi-automatic handgun; and finally

13   that the handgun possessed is not now and has never been

14   manufactured in the State of New York.

15             THE COURT:  Mr. Mora, the government went through each

16   of the elements of the crime that you are pleading guilty to

17   this afternoon.  They did that so that you would understand

18   that that's what they have to prove, each and every one of

19   those counts beyond a reasonable doubt before you can be

20   convicted.

21             Knowing that, do you still wish to go forward with

22   your plea?

23             THE DEFENDANT:  Yes, ma'am.

24             THE COURT:  Tell me, in your own words, what you did

25   that makes you believe that you are guilty of the charge in the

6B95MORP                           plea

1    indictment.

2           THE DEFENDANT:   What I did was that I had -- I was

3    keeping the gun at my mother's house.   I kept that gun at my

4    mother's house.

5           THE COURT:   You had a gun, is that the llama .9

6    millimeter semi-automatic pistol?

7           THE DEFENDANT:   Yes.

8           THE COURT:   Is that the gun we are talking about?

9           THE DEFENDANT:   Yes, ma'am.

10          THE COURT:   Approximately when did you have possession

11   of that gun at your mother's house?

12          THE DEFENDANT:   When?

13          THE COURT:   Approximately when.

14          THE DEFENDANT:   April 21st, 2005.

15          THE COURT:   And, before that date, had you been

16   convicted of a crime, a felony, a crime for which you could

17   receive a term exceeding one year?

18          Had you been convicted of a felony before April of

19   2005?

20          THE DEFENDANT:   Yes, ma'am.

21          THE COURT:   And, the indictment specifies two

22   different convictions; were you convicted in May of 2002 in New

23   York State Supreme Court of attempted criminal sale of a

24   controlled substance in the third degree, which is a class C

25   felony?

6B95MORP                          plea

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Were you also convicted in or around April

3    of 1990, in New York State Supreme Court, of criminal

4    possession of a controlled substance in the first degree, a

5    class A felony?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  I assume that there is a stipulation that

8    the gun had been shipped in interstate commerce, Mr. Baum?

9          MR. BAUM:  Yes, your Honor.

10          THE COURT:  Mr. Camp, are there any other questions

11    that you wish me to put to the defendant?

12          MR. CAMP:  Your Honor, I believe I left out a proffer

13    as to venue.

14          THE COURT:  Right.

15          MR. CAMP:  The defendant's mother's home is located in

16    Manhattan, I believe.

17          THE COURT:  Mr. Mora, your mother lives in Manhattan,

18    is that right?

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  That is where her home is where you kept

21    the gun?

22          THE DEFENDANT:  Yes, ma'am.

23          MR. CAMP:  That's it, your Honor.

24          THE COURT:  Now, when you possessed this gun in your

25    mother's home, did you know that what you were doing was wrong

6B95MORP                         plea

1    and illegal?

2           THE DEFENDANT:  Yes, ma'am.

3           THE COURT:  Are you pleading guilty to the crime

4    because you are guilty of that crime?

5           THE DEFENDANT:  Yes, ma'am.

6           THE COURT:  How do you now plead to Count One of the

7    indictment; guilty or not guilty?

8           THE DEFENDANT:  Guilty, ma'am.

9           THE COURT:  All right, Mr. Mora.  You have

10   acknowledged that you are in fact guilty as charged in the

11   indictment.  I am satisfied that you know your rights and that

12   you are waiving them knowingly and voluntarily.  Accordingly, I

13   find your plea is knowing and voluntary.  I find it is

14   supported by an independent basis in fact containing each of

15   the essential elements of the offense.

16          I accept your guilty plea and enter a judgment of

17   guilty on Count One.

18          I am going to order the customary presentence report.

19   Mr. Mora, that report is usually very important in my decision

20   as to what your sentence will be.  Please be truthful and

21   accurate with the probation officer.

22          You and Mr. Baum will have a right to examine the

23   report and comment on it at the time of sentencing.  Mr. Baum

24   may accompany you to any interview that you have with probation

25   but I urge you to read the final report, discuss it with

6B95MORP                         plea

1    Mr. Baum before the sentencing so that he can bring to my

2    attention anything in it which might be a mistake or anything

3    that you might want to have clarified.

4          Denise, do we have a sentencing date?

5          THE DEPUTY CLERK:  90 days would be February 9th at

6    3:00.

7          THE COURT:  Is that convenient for counsel, February

8    9, 3:00 p.m?

9          MR. CAMP:  Yes, your Honor.

10         MR. BAUM:  Yes, your Honor.

11         THE COURT:  Okay.  I see Mr. Mora is in custody.

12         Is there anything else?

13         MR. CAMP:  Nothing else.

14         THE COURT:  Mr. Baum.

15         MR. BAUM:  Nothing further.  Thank you.

16         THE COURT:  All right.  We are adjourned.

17                          o0o

18

19

20

21

22

23

24

25

# EXHIBIT C

729UMORS

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4         v.                05 CR 1149(BSJ)

5   WILLIAM MORA,

6           Defendant.

7   ------------------------------x

8                     New York, N.Y.
                      February 9, 2007
9                     3:15 p.m.

10

11  Before:

12                HON. BARBARA S. JONES

13                        District Judge

14                APPEARANCES

15  MICHAEL J. GARCIA
       United States Attorney for the
16      Southern District of New York
    BY:  JOSEPH FACCIPONTI
17      Assistant United States Attorney

18  ROBERT BAUM
       Attorney for Defendant
19

20

21

22

23

24

25

729UMORS

```
 1              (Case called)
 2              THE COURT:  Mr. Baum, I did receive your most recent
 3    submission of the letters attached and I have had the
 4    opportunity to read it.  I wanted to reassure you of that.  In
 5    addition, I have read your letter of February 6.  Of course, I
 6    have received and reviewed the presentence report.  Have you
 7    had the opportunity to do the same and discuss it with your
 8    client?
 9              MR. BAUM:  Yes, I have, your Honor.
10              THE COURT:  Mr. Mora, did you read the presentence
11    report and talk to Mr. Baum about it?
12              THE DEFENDANT:  Yes, ma'am.
13              THE COURT:  Mr. Baum, I don't believe that you had any
14    factual objections to the report, did you?
15              MR. BAUM:  No.
16              THE COURT:  Mr. Facciponti.
17              MR. FACCIPONTI:  Not from the government, your Honor.
18              THE COURT:  Let me hear from you, Mr. Baum, with
19    respect to what you think the appropriate sentence should be.
20    I have read your letters but, obviously, probation is
21    recommending the top of the guideline range here, and it is a
22    range of 57 to 71.
23              MR. BAUM:  As I pointed out in my letter, and I will
24    try not just to repeat my letter, but we are asking for the low
25    end of the guideline.  A 57-month sentence is a significant
```

729UMORS

1    sentence and, quite frankly, I think probation, in giving their

2    justification for a sentence at the high end, has somewhat

3    based it on things which are not entirely correct -- certainly

4    have not based it on a complete and full understanding of

5    Mr. Mora's criminal history, nor under the circumstances of his

6    arrest and conviction in this case.

7         A sentence of 57 months is basically five times higher

8    than any sentence he has ever served, and in fact probation

9    seems to refer that prior jail sentences have failed to deter

10   him.  He received one jail sentence almost 17 years ago, was

11   sentenced to the New York State shock incarceration program and

12   served less than a year.  That is the highest sentence he has

13   ever served.  He only had at the time of this offense one other

14   felony conviction, and in that case he received a sentence of

15   probation.

16        This case arose from an investigation related to a

17   case that was pending in Suffolk County which he has pled

18   guilty to but not been sentenced.  They were executing a search

19   warrant.

20        The particular circumstances of both Mr. Mora and how

21   this offense occurred would seem to indicate that a sentence at

22   the low end is sufficient to meet the goals of the Sentencing

23   Reform Act, for example, the gun that he was charged with was

24   not carried in the street.  It was a gun that was hidden in his

25   house, and I guess we could say it was hidden from anyone else

729UMORS

1   but it was hidden so that no one would get hurt.  He did not

2   carry it.  Never did carry it.  The gun was under a bed, and I

3   think that it may have been in another compartment, perhaps in

4   a box under the bed.  But the fact that a gun was in the

5   apartment might even be a misdemeanor under New York State law.

6       When they found the gun, they had not yet charged him

7   with the offense for which the search warrant was issued.  They

8   subsequently charged him with that offense and then seven

9   months later, without ever charging him with the gun,

10  instituted the felon-in-possession charge here in federal

11  court.

12      One of the reasons he had a gun, I think is a

13  mitigating circumstance which I hope would compel your Honor to

14  impose a sentence at the low end of the guideline.  The

15  presentence report reports that Mr. Mora, in the past, has been

16  shot and he was shot, not during something he did to cause

17  that; he was an innocent bystander.  He was seriously injured,

18  underwent a surgery and still has pain from that surgery today.

19      In addition to that, within the recent past, his

20  mother's home where he stayed and where the gun was found had

21  been the subject of a home invasion and his mother was terribly

22  frightened about it, which was not to say she had knowledge he

23  had a gun, but he kept a gun there because he feared both from

24  his own personal experience and from what happened with his

25  mother, he feared subsequent home invasions or being attacked.

729UMORS

1    He certainly didn't intend to use it.  He didn't carry it in

2    the street.  He had it there as a last precaution should

3    something happen in his home.

4         In addition, his own background, Judge, he is married.

5    I point out his wife is present here in the second row.  And

6    although the probation department has not been able to verify

7    his employment, he has been self-employed as a painter and has

8    been supporting his family prior to his incarceration.

9         And one other factor which is mentioned in the letters

10   to the Court which I didn't detail in my letter is that he has

11   spent the last five years while he has not been incarcerated

12   working with children in the Little League.  His wife brought

13   in photos.  He has been a coach.  He has worked with children.

14   As your Honor sees from one of the letters, his work -- and I

15   know that he had a criminal record and I know he used drugs,

16   but he never, never used drugs or was under the influence of

17   drugs when he dealt with these kids.  He was a role model to

18   them.  He was a leader.  He inspired them.

19        I have photos here if your Honor wanted to see it,

20   which demonstrate that going back five years, he was an

21   important part of this Little League and had an important role

22   to play in the lives of many.

23        THE COURT:  Do you want to hand them up?

24        MR. BAUM:  Yes, I would like to.  Thank you, your

25   Honor.

1    These are just pictures at various times. In fact, at

2  one time I think that he went with the Little League team to

3  Venezuela as a coach where they represented the United States

4  in a tournament in which children of that age had played. So

5  he is someone who had dedicated his own free time to community

6  service, and I think that is an important factor to consider.

7    THE COURT:  Thank you.

8    Mr. Baum, could you tell me what the charges are, the

9  pending charges, state charges?

10    MR. BAUM:  It is a conspiracy. It is not an actual

11  charge of distribution. It is a conspiracy charge. He has

12  entered a guilty plea. I think they had a plea agreement. I

13  think the plea agreement was for a minimum of four years.

14    THE COURT:  What was the drug?

15    MR. BAUM:  I think it was cocaine.

16    What Mr. Mora tells me is that when he entered the

17  guilty plea, it wasn't an agreed upon sentence, but the amount

18  of drugs that he entered a guilty plea to and allocuted to was

19  only a half ounce of cocaine, not a large amount of cocaine.

20    THE COURT:  What was the time period of the offense?

21    MR. BAUM:  They issued a search warrant while they

22  were still investigating the conspiracy. The gun was found and

23  he then was charged with the conspiracy a month after the gun

24  was found -- no, the gun was charged seven months later. I

25  think the conspiracy, they had an indictment a month after. I

729UMORS

1   don't think that he was arrested --

2        THE COURT:  They indicted him for engaging in this

3   conspiracy during what time period?

4        MR. BAUM:  The actual dates, your Honor?

5        THE COURT:  Ballpark -- last year, the year before?

6        MR. FACCIPONTI:  According to the PSR, to paragraph 43

7   of the PSR, the indictment that he was charged with says that

8   the conspiracy lasted from April 23, 2004 to April 22, 2005.

9        MR. BAUM:  April 22, 2005 is when I think they

10  indicted him and when they said that the conspiracy ended.

11        One other thing, at least part of why probation wanted

12  the high end was because they said that he had been out on a

13  warrant.  And I pointed out to your Honor that in fact he had

14  agreed to a plea agreement that involved obstruction, and the

15  basis for the obstruction was that he had left on a warrant.

16  So that is already built into a two-level enhancement in his

17  sentencing, and I don't think probation recognized that fact.

18  And whether that would have changed their recommendation, I am

19  not sure but I think it is something that they did not

20  recognize.

21        THE COURT:  Before I ask to hear from the defendant,

22  Mr. Facciponti, are there any facts that you want to bring to

23  my attention or any comments that the government wishes to

24  make?

25        MR. FACCIPONTI:  Just very briefly, the government

729UMORS

1   seeks a guideline sentence in this case as being reasonable.

2   And some of the reasons the government believes it would be

3   reasonable is that the defendant is a recidivist.  He does have

4   narcotics convictions from 1990 and 2001, and he has pled

5   guilty to a year-long narcotics conspiracy in 2005.  He had a

6   gun with him.  He is involved with drug dealing.  He committed

7   the instant offense and the narcotics offense in 2005 while

8   serving a term of probation, and he did attempt to flee in this

9   case.  So for those reasons, the government believes that

10  specific deterrence, at least in the defendant's case, would be

11  well served by a guideline sentence.

12          THE COURT:  Mr. Mora, do you have anything that you

13  want to say on your own behalf before I sentence you?

14          THE DEFENDANT:  Yes, ma'am.

15          I would like to say sorry to this Court for all of the

16  wrongdoings that I committed, sorry to you, your Honor, to the

17  DA, to my lawyer, to my family.  And I take full responsibility

18  for what I did.  I know I wasn't supposed to have a gun in the

19  house.  I will not do that ever again.  And I would like your

20  Honor to take into consideration of my sentence and to

21  recommend a drug program if it is possible.

22          God bless you.

23          Thank you.

24          THE COURT:  Anything else?

25          First of all, I find that the guideline offense level,

729UMORS

criminal history category range are all correctly computed by

the probation department in the report and that the advisory

guideline range is 57 to 71 months.  I believe that is a

reasonable range in this case because of the seriousness of the

crime.  It is a gun possession and it was a loaded

semiautomatic defaced weapon.  That is certainly serious

enough, in my book, to merit a range of 57 to 71 months.

I recognize that Mr. Mora appears to be making some

attempts to rehabilitate himself.  Certainly his work with the

baseball team is a good start, however, as recently as I gather

as 2004, 2005 he is still in the drug business and it is not

the first time.

Nonetheless, I think that 57 months is a sufficient

sentence here and not greater than necessary to achieve all of

the sentencing purposes.  I think it is enough to deter him.

In particular, it is a long enough sentence to deter others who

think it is OK to possess a gun after having been convicted of

a felony.  I don't think giving him more than 57 months is

going to make a big difference in terms of deterrence.  And I

do know, as Mr. Baum has brought to my attention, his previous

sentences were very short or, in the last case, was a term of

probation.

Nothing that you have done, Mr. Mora, commends you to

this Court.  I hope that now that you are older and you have a

wife and, I think, a 19-month-old child that this prison term,

729UMORS

1  which is longer than you have ever served, will make a dent and

2  you will realize that you don't want to be separated from them

3  again and you have to go out and work for a living and work

4  legally and get away from the drug trade.  I see that you

5  haven't been able to do that.

6         And I do recognize too that the convictions in your

7  history are very old, but now we have a recent one again, 2004,

8  2005.  That just indicates to me that you still haven't gotten

9  out of the drug trade at all.  And I don't know what you were

10  doing between 1990 and 2004, but there's not a great work

11  history here.

12        Nobody can do this for you, Mr. Mora.  You have to

13  convince yourself that you are putting yourself in too much

14  jeopardy, not to mention the dangers that are attendant to the

15  drug trade.  And if you get out, I am just telling you now, and

16  you come back before me for violating your supervised release,

17  particularly getting involved with drugs again, you are going

18  to do more prison time.

19        So I hope that in the next few years, you will be able

20  to maybe learn a trade but, more importantly, figure out what

21  is going on with your drug habit and also turn your head around

22  because it is just not worth it.  What's going to happen to you

23  now isn't worth it.  And I hope that you have figured that out.

24  Your wife is sitting here today.  You have a lot of family

25  support, so I hope this is the last time that I see you.

1        And believe me, I could give you 71 months, and it

2    would be well within the reasonable range here.  But I am

3    giving you 57 so that you will have 14 months less and maybe

4    you will have learned your lesson in 57 months and you will be

5    able to become a productive member of society, get back to your

6    wife, to your child, to working with kids and getting a job,

7    which is the most important thing of all.

8        I am sure that Mr. Baum has said all of these things

9    to you.  I am going to add just one thing.  The next time that

10    you are before me, after you are released, if you are on

11    supervised release and you come back here with a violation, the

12    likelihood is that you will be put back in prison for violating

13    your supervised release.  And I will keep my promise.  So

14    please keep that in mind, OK?

15        THE DEFENDANT:  Yes, ma'am.

16        THE COURT:  Let me now state the sentence that I

17    intend to impose.

18        It is the judgment of this Court that you be remanded

19    to the custody of the Bureau of Prisons for 57 months, to be

20    followed by a term of three years of supervised release.

21        There are standard conditions of supervision which

22    will be explained to you -- there are 13 of them -- by the

23    probation officer upon your release.

24        In addition, you will be subject to the mandatory

25    conditions and they are pretty obvious, but I am going to go

729UMORS

1    through them right now and take the time.

2        While you are on supervised release and afterwards, I

3    hope, you will not commit another federal, state or local

4    crime.

5        You will not illegally possess a controlled substance.

6        And you will not possess a firearm or destructive

7    device.

8        I am going to impose a special condition requiring

9    drug treatment and testing as recommended by the probation

10   department.

11       And I am also ordering that you cooperate in the

12   collection of DNA as directed by the probation office.

13       Now, as to special conditions, you will participate in

14   a program approved by the probation office, which program may

15   include testing to determine whether you have reverted to using

16   drugs or alcohol.

17       I authorize the release of available drug treatment

18   evaluations and reports to the substance abuse treatment

19   provider as approved by the probation officer.  And then you

20   will be required to contribute to the cost of services rendered

21   in an amount determined by the probation officer.  This is

22   always based on whether you have the ability to pay anything or

23   not.  If you don't, you won't have to and, also, the

24   availability of any possible insurance that may be around.

25       You will also submit your person, residence, place of

729UMORS

business, vehicle, and any other premises under your control

once you get out and you are on supervised release, to a search

on the basis that the probation officer has a reasonable belief

that contraband or evidence of a violation of the conditions of

your release may be found.  The search must be conducted at a

reasonable time and in a reasonable manner.  Failure to submit

to a search may be grounds for revocation of your supervised

release, and you must inform any other residents that the

premises that you are in may be subject to search under this

condition.

I am ordering you to report to the nearest probation

office 72 hours after your release from custody.

You are also ordered to pay to the United States a

special assessment of $100 which is due and payable

immediately.

I am not imposing a fine because I agree with

probation, and I don't believe that you have the wherewithal to

pay one.

Is there any legal reason or anything I simply may

have omitted why the sentence I have just stated should not be

imposed?

Mr. Facciponti.

MR. FACCIPONTI:  Nothing the government is aware of.

THE COURT:  Mr. Baum.

MR. BAUM:  I would ask the Court to make two

729UMORS

1    recommendations.

2            THE COURT:  All right.

3            MR. BAUM:  One recommendation is that he be designated

4    to Fort Dix so that his family would be able to visit him.

5    That would be the closest facility to his family and to his

6    19-month-old child.

7            Second, we ask, in light of his long drug history,

8    that your Honor recommend that he get a headstart on drug

9    treatment while he is in the Bureau of Prisons, if your Honor

10   could recommend that he be accepted into the Bureau of Prisons'

11   intensive drug treatment program.

12           THE COURT:  Is that also called the 500-hour program?

13   Is that the same thing?

14           MR. BAUM:  It is.

15           THE COURT:  But the official name is intensive --

16           MR. BAUM:  If your Honor would write "intensive drug

17   treatment and 500-hour program," there would be no mistake.

18           THE COURT:  I will make those two recommendations for

19   the Bureau of Prisons.

20           I know that you know, Mr. Mora, they have their own

21   guidelines.  They will look at my recommendations.  They will

22   try to honor it, but it is entirely up to them.  I will

23   recommend Fort Dix so that you can be close to your family, and

24   I will recommend the drug treatment, the 500-hour program.  So

25   maybe that will help you in terms of your drug problem and you

729UMORS

1    will be able to do well when you get out.

2           I am also obliged to tell you, and I want to advise

3    you that, to the extent that you may have issues for which you

4    can appeal, that you have to file a notice of appeal within ten

5    days of the filing of the judgment in this case.  You have to

6    file it in writing with the clerk of the District Court.  If

7    you can't afford to pay to file that notice of appeal, you can

8    apply for in forma pauperis status.  And when that is granted,

9    you will be able to file your notice of appeal without having

10   to pay any fees.  So do you understand that you have those

11   appeal rights?

12           THE DEFENDANT:  Yes, ma'am.

13           THE COURT:  Is there anything else from either the

14   government or the defendant?

15           MR. FACCIPONTI:  No.

16           MR. BAUM:  Nothing further.

17           Thank you, your Honor.

18

19                          o    0    o

20

21

22

23

24

25